IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.
05 MAY 25 PM 5: 22
ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

**GERALD BOWEN, et al.,**

**Plaintiffs,**

**v.**

**WORLDWIDE MORTGAGE CORP., et al.,**

**Defendants.**

**NO. 04-2575 D/An**

---

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

---

Before the Court is Defendant Homecoming Financial Network's Motion to Compel Arbitration filed on September 13, 2004. United States District Judge Bernice B. Donald referred this matter to the Magistrate Judge for determination. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs entered into an agreement with Defendant Worldwide Mortgage Corporation ("Worldwide") for the extension of a residential mortgage loan to repair and improve their home located in Memphis, TN (the "Agreement"). As part of the Agreement, Plaintiffs signed an Arbitration Rider which provides, in relevant part, that:

> The parties acknowledge that they had a right to litigate claims through a court before a judge or jury, but will not have that right if either party elects arbitration. The parties hereby knowingly and voluntarily waive their rights to litigate such claims in a court before a judge or jury upon election of arbitration by either party. You also acknowledge that you will not have the right to participate as a representative, claimant or member of any class action pertaining to any claim that is subject to arbitration, even if such class action is pending on the date of this arbitration ride, except that this arbitration rider will not preclude your



This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-26-05



> participation in a class which has already been certified by a court of competent jurisdiction on or before the date of this Arbitration Rider.

(Mot. to Compel Arbitration, at 2). The Arbitration Rider goes on to state that the "Lender or any assignee of Lender or [Plaintiffs] can request that any claim, dispute, or controversy, . . . including initial claims, counter-claims, or third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement . . . be resolved . . . by binding arbitration . . . ." (*Id.* at 3). Plaintiffs signed the Arbitration Rider directly below the names of several potential arbitrators.

On July 27, 2004 Plaintiffs filed this suit against Defendant Homecomings Financial Network ("Homecomings") and other Defendants (1) alleging misrepresentations of the Agreement and discriminatory lending practice and (2) disputing certain charges charged to them at their loan closing. Homecomings filed its Answer on August 23, 2004 and asserted its right to binding arbitration. On August 25, 2004, Homecomings' counsel wrote to Plaintiffs' counsel and requested that these claims be submitted to arbitration, as provided in the Agreement. When Plaintiffs refused to arbitrate, Homecomings filed the instant motion.

Plaintiffs responded to the Motion to Compel Arbitration on October 19, 2004. Although Plaintiffs cite no legal authority in their Response, they allege that Homecomings should not be allowed to enforce the Agreement to arbitrate because the Agreement was entered into between Plaintiff and Defendant Decision One Mortgage Corporation. Plaintiffs argue that Homecomings was not an original party to the Agreement; therefore, as a nonsignatory to the Agreement, Homecomings should not be allowed to enforce the agreement. Because the Arbitration Rider was not recorded with Plaintiffs' Deed of Trust on the loan, Plaintiffs argue the provision is unenforceable. Plaintiffs also argue the Arbitration Rider is overly broad and is unconscionable

because Plaintiffs have no experience in handling home loans. Finally, Plaintiffs argue that the Arbitration Rider is unenforceable because it was not signed by any defendant.

## ANALYSIS

In ruling on a motion to compel arbitration, the Court must first determine whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Once the Court determines a valid agreement exists, the Court must then determine if the dispute falls within the scope of the agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

### I. There is a valid Agreement.

Pursuant to the Federal Arbitration Act ("FAA"), federal law applies to a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2 (2004). Thus, the FAA governs any agreement to arbitrate contained in a contract relating to interstate commerce. The term interstate commerce means "commerce among the several states or with foreign nations." 9 U.S.C. § 1 (2004). The Agreement in this case involves the extension of credit to a homeowner, which implicates interstate commerce; therefore, the FAA governs the Agreement.

Since Plaintiffs have refused to arbitrate, as required by the Agreement, Homecoming is entitled to "petition any United States district court . . . for an order directing that such arbitration proceed." 9 U.S.C. § 4 (2004). Overall, courts should "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The FAA preempts state law on the issue of arbitrability in dealing with those contracts falling under the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). In determining whether the parties agreed to arbitrate,

however, ordinary state law principles governing contract formation apply. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The FAA "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Cook Chocolate Co. v. Saloman, Inc.*, 684 F. Supp. 1177, 1182 (S.D.N.Y. 1988). Thus, the Court must apply Tennessee law to determine if a valid, enforceable contract exists. In Tennessee there is a presumption "in favor of the validity and regularity of a written instrument, and the person asserting its invalidity has the burden of proving his allegations by clear and satisfactory evidence." *In re Acuff v. O'Linger*, 56 S.W.3d 527, 531 (Tenn. Ct. App. 2001) (quoting *Kyle v. Kyle*, 74 S.W.2d 1065, 1067 (Tenn. Ct. App. 1934)).

A. Unconscionability

An enforceable agreement in Tennessee must exhibit mutual assent and valid consideration. *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984). A contract that is unconscionable will not be enforced. *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.2d 159, 180-71 (Tenn. Ct. App. 2001). Plaintiffs assert in this matter that the arbitration provision is invalid because it is unconscionable. Under Tennessee contract law, a contract can be found to be unconscionable for one of two reasons:

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170- 71 (Tenn. Ct. App. 2001) (citations omitted). A contract is thus unconscionable when its terms "are beyond the reasonable

expectations of an ordinary person or oppressive . . . ." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996).

In this case, Plaintiffs argue that the Arbitration Rider is unconscionable because "Defendants [have] extensive experience and sophistication in transactions such as this" and because Plaintiffs have "no experience in contracting for a home improvement loan and [are] entirely inexperienced and unsophisticated in matters involving consumer lending." (Pl.'s Resp. to Mot. to Compel Arbitration, at 3). The Court, however, is unpersuaded by Plaintiffs' argument.

Tennessee courts analyzed unconscionability in *Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 733 (Tenn. Ct. App. 2003) and *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). In *Howell*, an Executor of a deceased nursing home resident sued the nursing home for abuse and neglect. The defendants insisted that the admitting agreement, signed by the deceased's husband, was enforceable and required that the plaintiff's claims be handled by mediation and arbitration. Mr. Howell was unable to read or write, and the nursing home representative chose to explain the agreement to him, rather than have Mr. Howell read the agreement and attempt to understand it for himself. While the nursing home representative said she explained mediation and arbitration, she did not explain to Mr. Howell that he was giving up his right to a jury trial. Mr. Howell was also required to sign the agreement if his wife was to be allowed to enter the nursing home.

The *Buraczynski* case involved a medical malpractice action between a patient and her doctor. Beverly Buraczynski received a total right knee replacement in September 1990, and some two months after the surgery, her doctor asked her to sign a "Physician-Patient Arbitration Agreement" that was "effective as of the date of first medical services." *Buraczynski*, 919

S.W.2d at 316. The doctor refused to continue to treat Ms. Buraczynski if she did not sign the agreement. Shortly after signing the agreement, Ms. Buraczynski began to experience problems with her knee. She sued to recover damages.

This case can be distinguished from *Howell* and *Buraczynski*. Mr. Howell was elderly and unable to read or write, and Ms. Buraczynski was a patient suffering from a knee replacement. In this matter, Plaintiffs are not illiterate. Moreover, unlike the two Tennessee cases, the terms of the Arbitration Rider are not buried within the document. Instead, the terms are clearly typed in a conspicuous font, and Plaintiffs were required to sign directly below the names of a listing of potential arbitrators. Moreover, the terms of the Arbitration Rider are not overly complex. For example, the Rider states that "The parties acknowledge that they had a right to litigate claims through a court before a judge or jury, but will not have that right if either party elects arbitration." (Mot. to Compel Arbitration, at 2). This sentence is easy to understand and clearly states that a party will not have a right to a jury trial if arbitration is selected. Experience in home improvement loan contracts is not needed to understand Plaintiffs were potentially waiving their right to jury trial. For these reasons, the Agreement is not unconscionable.

B. Overly Broad

Next, Plaintiffs argue that the Arbitration Rider is overly broad. The Arbitration Rider provides that any claim, dispute, or controversy, including initial claims, counter-claims, or third party claims, may be submitted to arbitration. This language is customary for arbitration provisions, and the Court finds nothing out of the ordinary in the Agreement. As noted by the Tennessee Court of Appeals, "[u]nless a contract containing the arbitration clause is otherwise revocable upon grounds of existing law or in equity, such as fraud or unconscionaility, *the terms*

*of the arbitration provision are binding on the parties.*" *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002) (emphasis added).

Under Tennessee law, a party is obligated to be bound by the terms of an agreement he or she signs. If a person "fails to read the contract or otherwise learn its contents, he signs the same at his peril and is estopped to deny his obligations, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) (citing *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950)). Plaintiffs cite no authority to support their claim that the Arbitration Rider is overly broad, and the Court finds this argument to be without merit.

C. Homecomings' Standing

Plaintiffs also argue that Homecomings cannot enforce the Arbitration Rider because they are not the lender or an assignee of the lender. Plaintiffs offer no case authority to show a non-signatory cannot enforce an arbitration agreement. By contrast, Homecomings has identified cases which held that non-signatories do have standing to enforce an arbitration agreement.

In the Sixth Circuit, "nonsignatories of arbitration agreements" can enforce arbitration agreements "under ordinary contract and agency principles." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990). In *Arnold*, the owner of a corporation entered into a stock purchase agreement with a larger corporation for the sale of his personal shares of company stock in exchange for a large sum of money. After Mr. Arnold sold his stock to the company, the Board of Directors entered into several deals that earned each director a large sum of money. Because he had sold all of his shares, Mr. Arnold did not profit from the directors' actions, so he sued the

company and the directors alleging violations of the Securities Exchange Act and the Ohio Securities Act. *See id.* at 1271-72.

The stock purchase agreement contained an arbitration provision, and while there was little doubt that Mr. Arnold would be required to arbitrate with the company, there was some confusion as to whether the directors, as non-signators to the agreement, would also be required to arbitrate with Mr. Arnold. Ultimately, the court held that because "the nonsignatory defendants are alleged to have committed acts related to their running of the corporation," the directors would also be required to arbitrate. *Id.* at 1282. The court found it critical that "[a]ll of these alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation." *Id.*

In this case, the Arbitration Rider applies to the lender or any assignee, and Homecomings was delegated the duty of servicing the loan agreement on behalf of the current assignees. The Court concludes that Homecomings' actions under the Agreement relate to the actions of the signatory defendants. Moreover, Homecomings has been sued under the terms of the Agreement, which applies to the lender and its assignees, and Plaintiffs have asserted the same claims against Homecomings as they have against the signatory defendants. For these reasons, the court concludes that Homecomings should be entitled to enforce the Arbitration Rider.

D. Signing the Original Agreement

Plaintiffs finally argue that because the original lender did not sign the Arbitration Rider, the Arbitration Rider is not enforceable. However, an arbitration clause does not need to be signed by both parties to be enforceable. *T.R. Mills*, 93 S.W.3d at 869 (noting that in Tennessee, an arbitration provision does not need to be signed by the parties to be binding). Instead, so long

as the actions of the parties indicate an intention to be bound by the terms of the Agreement, the Court should recognize the existence of a contract. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) (citations omitted) (noting that the cardinal rule for interpreting a contract is to determine the intention of the parties and to give effect to that intention).

In this case the signatory defendant did not sign the actual Arbitration Rider. However, as the party to be bound, the Plaintiffs signed their name to the Arbitration Rider. Moreover, the Court concludes that the Plaintiffs signed their names to the Agreement intending to make a binding agreement between themselves and the signatory defendant. Therefore, even though the signatory defendant did not sign the Agreement, *Bob Pearsall Motors* instructs the Court to give effect to the intention of the parties. Therefore, the Court concludes the Arbitration Rider is enforceable.

**II. The dispute in this case falls within the scope of the Agreement.**

Because the arbitration provision is valid, the Court must determine if the dispute falls within the scope of the Agreement. As noted above, the Agreement states that "any claim, dispute, or controversy, . . . including initial claims, counter-claims, or third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement" may be submitted to arbitration by the lender or any assignee. The Court has already determined that Homecomings can enforce the terms of the Arbitration Rider. Ttherefore, the Court must only determine if Plaintiffs' claims are within the scope of the Agreement.

In this matter Plaintiffs have asserted various causes of actions against Defendants, including (1) charges wrongfully charged to Plaintiffs at the loan closing, (2) misrepresentations in the Agreement, (3) inflated appraisal values and false representations about the market value

of the property, (4) and discriminatory lending practices. After due consideration, the Court concludes that all of Plaintiffs' claims come under the scope of the Arbitration Rider. Plaintiffs' claims should be settled in accordance with the terms of the Agreement's Arbitration Rider.

## CONCLUSION

Because the Arbitration Rider is valid and because Plaintiffs' alleged claims against Homecomings are within the scope of the Arbitration Rider, Homecomings' Motion to Compel Arbitration is **GRANTED**. Pursuant to the Order of Reference, any objections to this Order shall be made in writing within ten days after service of this Order and shall set forth with particularity those portions of the Order objected to and the reasons for those objections.

**IT IS SO ORDERED.**

S. Thomas Anderson

S. THOMAS ANDERSON
UNITED STATES MAGISTRATE JUDGE

Date: May 25, 2005

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 35 in case 2:04-CV-02575 was distributed by fax, mail, or direct printing on May 26, 2005 to the parties listed.

---

Eric Sargent
8617 Cedar Crest Lane
Olive Branch, MS 38654

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Sapna V. Raj
MEMPHIS AREA LEGAL SERVICES, INC.
109 N. Main Street
Ste. 201
Memphis, TN 38103

Frank M. Holbrook
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Webb A. Brewer
MEMPHIS AREA LEGAL SERVICES, INC.
109 N. Main Street
Ste. 201
Memphis, TN 38103

Patrick Ryan Beckett
BUTTER SNOW O'MARA STEVENS & CANNADA, PLLC
P.O. Box 22567
Jackson, MS 39225--256

Honorable Bernice Donald
US DISTRICT COURT